UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KIZZIE JAMES,

      Plaintiff,

v.                       Case No:  2:16-cv-436-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## OPINION AND ORDER

This cause is before the Court on Plaintiff Kizzie Levone James' Complaint (Doc. 1) filed on July 21, 2016.  Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, disability insurance benefits, and supplemental security income.  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.  For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.**      **Social Security Act Eligibility, Procedural History, the ALJ's Decision, and Standard of Review**

      **A.**      **Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.

The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.

**B.**     **Procedural History**

On August 14, 2012, Plaintiff filed an application for a period of disability, disability insurance benefits, and supplemental security income benefits alleging an onset date of August 1, 2011.  (Tr. at 180, 187).  Plaintiff later amended her alleged onset date to August 1, 2012.  (Tr. at 31).  Plaintiff's claims were denied initially on September 10, 2012, (Tr. at 79-80), and on reconsideration on October 25, 2012, (Tr. at 100-101).  Plaintiff sought review of her application and requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. at 131).  A hearing was held before ALJ Gregory M. Hamel on February 2, 2015.  (Tr. at 28-62).  ALJ Hamel issued an unfavorable decision on February 26, 2015.  (Tr. at 9-27).  The ALJ found Plaintiff not to be under a disability from August 1, 2012, through the date of the decision.  (Tr. at 21).

On May 5, 2016, the Appeals Council denied Plaintiff's request for review.  (Tr. at 1-6).  On June 6, 2016, Plaintiff filed a Complaint in this Court.  (Doc. 1).  Defendant filed an Answer (Doc. 10) and the Transcript (Doc. 11) on September 12, 2016.  The parties filed memoranda in support.  (*See* Docs. 15-16).  The parties consented to proceed before a United States Magistrate Judge for all proceedings.  (*See* Doc. 14).  This case is ripe for review.

**C.**     **Summary of the ALJ's Decision**

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled.  *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir.

2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1]  An ALJ must determine

whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment;

(3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R.

Part 404, Subpart P, Appendix 1; (4) has the residual functional capacity ("RFC") to perform her

past relevant work; and (5) can perform other work of the sort found in the national economy.

*Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant has the burden of

proof through step four and then the burden shifts to the Commissioner at step five.  *Hines-Sharp*

*v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through September 30,

2014.  (Tr. at 15).  At step one of the sequential evaluation, the ALJ found that Plaintiff had not

engaged in substantial gainful activity since August 1, 2012, the alleged onset date.  (Tr. at 15).

At step two, the ALJ found that Plaintiff suffered from the following severe impairments:

"degenerative joint disease of the knees and right ankle, degenerative disc disease of the lumbar

spine, and obesity."  (Tr. at 15).  At step three, the ALJ determined that Plaintiff did not have an

impairment or combination of impairments that meets or medically equals the severity of one of

the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d),

404.1525, 404.1526, 416.920(d), 416.925, and 416.926).  (Tr. at 15).  The ALJ specifically

considered Listings 1.02 and 1.04.  (Tr. at 15-16).

Based on the evidence, the ALJ determined that Plaintiff had the residual functional

capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b)

---

[1] Unpublished opinions may be cited as persuasive on a particular point.  The Court does not rely
on unpublished opinions as precedent.  Citation to unpublished opinions on or after January 1,
2007 is expressly permitted under Rule 31.1, Fed. R. App. P.  Unpublished opinions may be
cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

except Plaintiff "can only occasionally climb stairs, balance, stoop, kneel, crouch, or crawl; she cannot climb ladders and similar devices; and she cannot work in hazardous environments."  (Tr. at 16).

At step four, the ALJ determined that Plaintiff is capable of performing past relevant work as a cashier and assembly worker.  (Tr. at 20).  The ALJ found that "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functional capacity."  (Tr. at 20).  Specifically, the ALJ noted that Plaintiff had past relevant work as a cashier, (DOT Job Code 211.462-014), fish cleaner (DOT Job Code 525.684-030), sandwich maker (DOT Job Code 317.684-014), stocker (DOT Job Code 922.687-058), kitchen helper (DOT Job Code 318.687-010), and assembly worker (DOT Job Code 706.684-022).  (Tr. at 20).[2] The ALJ noted that these jobs were described as light and medium in exertional level.  (Tr. at 20).  According to testimony from a vocational expert ("VE"), an individual with Plaintiff's RFC "can carry out the functions of cashier and assembly worker."  (Tr. at 20).[3]  Pursuant to Social Security Ruling ("SSR") 00-4p, the ALJ found the VE's testimony to be consistent with the information contained in the *Dictionary of Occupational Titles*.  (Tr. at 20).

In comparing Plaintiff's RFC with the physical and mental demands of Plaintiff's past relevant work, the ALJ found that Plaintiff is able to perform it as actually and generally performed.  (Tr. at 20).  Moreover, the ALJ noted that because Plaintiff can carry out the functions of her past relevant work, a finding of "not disabled" is reached without the need to

---

[2] "DOT" refers to the *Dictionary of Occupational Titles*.

[3] Of note, however, the ALJ stated that "the assembly worker job may not have been done long enough to qualify as substantial gainful activity, but assuming argued [sic], she would still be able to do the cashier job and the vocational expert has given other jobs that the claimant could do."  (Tr. at 20).

consider the final step in the sequential evaluation process. (Tr. at 20). Furthermore, the ALJ stated that, even if Plaintiff were able to do only sedentary work, together with the other limitations found in the established RFC, a finding of "not disabled" would still be reached under the medical-vocational guidelines. (Tr. at 20).

Although the ALJ found at step four that Plaintiff could perform past relevant work and was, therefore, not disabled, the ALJ proceeded to make alternative findings at step five. (Tr. at 20). At step five, after considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (Tr. at 21). Specifically, the ALJ noted the VE's testimony that an individual with Plaintiff's age, education, work experience, and RFC would be able to perform the requirements of representative occupations including: charge account clerk (DOT Job Code 205.367-014) with 1,400 jobs in the regional economy and 58,000 nationally; assembly positions (DOT Job Code 713.687-026) with 950 jobs in the regional economy and 78,000 nationally; and surveillance system monitor (DOT Job Code 379.367-010) with 300 jobs in the regional economy and 4,500 nationally." (Tr. at 21). Each of these jobs has a Specific Vocational Preparation Code of 2 and would be available to Plaintiff even if she were limited to the performance of only routine and repetitive tasks due to mental health symptoms. (Tr. at 21). The ALJ found, however, that Plaintiff is not significantly limited by any mental illness or diminished intellectual function. (Tr. at 21). Thus, the ALJ did not include any limitations in the RFC assessment related to mental health. (Tr. at 21).

Based on the testimony of the VE and considering Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff "would be capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. at 21).

Thus, the ALJ determined that a finding of "not disabled" was appropriate. (Tr. at 21).

Accordingly, the ALJ found that Plaintiff was not under a disability from August 1, 2012,

through the date of the decision. (Tr. at 21).

###    D.    Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the

correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether

the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390

(1971). The Commissioner's findings of fact are conclusive if supported by substantial

evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; *i.e.*, the evidence

must do more than merely create a suspicion of the existence of a fact, and must include such

relevant evidence as a reasonable person would accept as adequate to support the conclusion.

*Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835,

838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district

court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and

even if the reviewer finds that "the evidence preponderates against" the Commissioner's

decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932

F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking

into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560;

*accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must

scrutinize the entire record to determine reasonableness of factual findings).

**II.     Analysis**

On appeal, Plaintiff raises three issues:

(1) The ALJ erred by failing to adequately consider Plaintiff's medically determinable impairment of obesity and failed to properly evaluate the impact of that condition in assessing Plaintiff's work capacity, in violation of [SSR] 02-1p, 96-8p.

(2) The ALJ's assessment of Plaintiff's credibility is not supported by substantial evidence because the ALJ misconstrued the evidence of record and did not articulate legally sufficient rationale for discrediting Plaintiff in violation of 20 C.F.R. §§ 404.1529(c), 416.929(c), and SSR 16-3p.

(3) The [RFC] assessment is not supported by substantial evidence because the ALJ failed to account for Plaintiff's peripheral neuropathy/carpal tunnel syndrome in evaluating her work capacity, in violation of 20 C.F.R. §§ 404.1545(b), 416.945(b).

(Doc. 15 at 2).  The Court will consider each issue in turn.

**A.     Plaintiff's Obesity**

The Court first addresses Plaintiff's contention that the ALJ failed to consider Plaintiff's medically determinable impairment of obesity and the impact of that condition in assessing Plaintiff's work capacity.  (Doc. 15 at 8).  Plaintiff argues that, when viewed in combination with the orthopedic impairments of her knees, left ankle, and back, her obesity is a significant contributing factor to her physical limitations.  (*Id*. at 9).  Plaintiff argues that her medical examinations reflect that she has a body mass index greater than 40, and sometimes greater than 50, placing her obesity in the "extreme" range.  (*Id*.).  Plaintiff argues that she routinely has difficulty walking, weight-bearing, and with activities of daily living.  (*Id*. at 10).

Furthermore, Plaintiff contends that the medical evidence of record corroborates her testimony that her obesity is a severe impairment in its own right and limits her functional ability to stand and walk.  (*Id*.).  Plaintiff argues that, although the ALJ acknowledged her obesity at step two and step three, the ALJ failed to fully consider the impact of her obesity in assessing her

RFC. (*Id.*). Thus, Plaintiff argues that the ALJ's findings related to her obesity are not supported by substantial evidence. (*Id.* at 12).

Defendant responds that the ALJ properly evaluated Plaintiff's obesity in accordance with SSR 02-1p. (*See* Doc. 16 at 6). Specifically, Defendant notes that the ALJ included Plaintiff's obesity as a severe impairment at step two. (*Id.* at 7). Moreover, Defendant contends that the ALJ considered Plaintiff's impairments singularly and in combination in evaluating whether Plaintiff met a Listing. (*Id.* (citing Tr. at 15)). In fact, Defendant notes that the ALJ specifically referenced SSR 02-1p in making that finding. (*Id.*). Defendant further notes that the ALJ stated that he "considered the effects of the claimant's obesity in reducing the claimant's residual functional capacity pursuant to [SSR] 02-0lp [sic]." (*Id.* (citing Tr. at 16)). Moreover, Defendant contends that even assuming, *arguendo*, that "Plaintiff's obesity prohibited light work, Plaintiff failed to prove that her obesity singularly or in combination with other impairments precluded sedentary jobs." (*Id.* at 8). Thus, Defendant argues that the ALJ properly considered Plaintiff's obesity. (*See id.*).

In reviewing this issue, the Court notes that an ALJ must consider obesity as an impairment when evaluating a claimant's disability. *See* SSR 02-1p, 2000 WL 628049, at *1 (Sept. 12, 2000). While it is the ALJ's responsibility to find that obesity is a medically determinable impairment, the burden is on Plaintiff to establish that her obesity results in functional limitations, and that she is disabled under the Social Security Act. *See* 20 C.F.R. § 404.1512(a), (c) (2016) (instructing claimant that the ALJ will consider "only impairment(s) you say you have or about which we receive evidence" and "[y]ou must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled"); *see also Flynn v. Heckler*, 768 F.2d 1273, 1274 (11th Cir. 1985) (noting claimant

"bears the burden of demonstrating that the Secretary's decision . . . is not supported by substantial evidence").[4]

Here, it is clear that the ALJ reviewed all of the relevant evidence of record regarding Plaintiff's obesity, and considered her obesity in the context of her other health problems. (*See* Tr. at 16). Specifically, as noted by Defendant, the ALJ found Plaintiff's obesity to be a severe impairment at step two and also considered her obesity at step three. (Tr. at 15). Moreover, the ALJ specifically stated that he "considered the effects of the claimant's obesity in reducing the claimant's [RFC] pursuant to SSR 02-1p." (Tr. at 16). Based on his review, the ALJ then determined that Plaintiff has the RFC to perform light work except that Plaintiff "can only occasionally climb stairs, balance, stoop, kneel, crouch, or crawl; she cannot climb ladders and similar devices; and she cannot work in hazardous environments." (Tr. at 16). There is no indication from the record that Plaintiff's obesity was not properly considered in making these findings.

Furthermore, although Plaintiff argues that the ALJ erred in reviewing her obesity (Doc. 15 at 12), Plaintiff has not shown what additional functional limitations result from her obesity. On this point, the Eleventh Circuit and other district courts within this circuit have found that an ALJ does not commit reversible error in circumstances similar to this case. *See, e.g.*, *Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 264 (11th Cir. 2009); *Vickers v. Astrue*, No. 3:08CV78/MCR/EMT, 2009 WL 722273, at *14 (N.D. Fla. Mar. 18, 2009); *Ingram v. Astrue*, No. 8:07-CV-1591-JDW-TBM, 2008 WL 2943287, at *6 (M.D. Fla. July 30, 2008).

---

[4] The Court notes that these regulations were recently revised. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017).

In *Castel v. Commissioner of Social Security*, for instance, the claimant argued that the ALJ failed to consider her obesity in combination with other impairments and failed to specify any functional limitations resulting from her severe impairment of obesity. 355 F. App'x at 264. The Eleventh Circuit, however, found no error because the "record reflect[ed] that the ALJ considered [the claimant's] obesity[,]" and "the ALJ made specific reference to SSR 02-1p in his ruling." *Id.* Thus, despite the ALJ determining that obesity was a severe impairment, the ALJ did not err because the medical evidence did not support "specific functional limitations" attributable to obesity. *See id.*

Similarly, in *Vickers v. Astrue*, the ALJ did not mention the claimant's obesity. 2009 WL 722273, at *14. Nonetheless, the court found no error in the ALJ's decision because the claimant did not show he had any limitations related to his obesity. *See id.*

Further, in *Ingram v. Astrue*, the claimant's weight was noted repeatedly throughout the record, but the ALJ failed to mention the claimant's obesity or to address it in accordance with SSR 02-1p. 2008 WL 2943287, at *6. Nevertheless, this Court found that the error did not constitute grounds for reversal because the claimant had not identified any evidence suggesting that his RFC was affected by his obesity. *See id.*

Here, like *Castel*, the record shows that the ALJ specifically considered Plaintiff's obesity and, in fact, made specific reference to SSR 02-1p in his ruling. (*See* Tr. at 16). This consideration was found to be sufficient in *Castel*. *See* 355 F. App'x at 264. Moreover, like *Castel*, while the ALJ specifically determined that obesity was a severe impairment, (Tr. at 15), as explained below, the medical evidence does not support "specific functional limitations" attributable to obesity. *See Castel*, 355 F. App'x at 264. Furthermore, as in *Vickers* and *Ingram*, Plaintiff has failed to show any additional limitations resulting from her obesity. *See* 2009 WL

722273, at *14; 2008 WL 2943287, at *6.  Thus, the ALJ did not err in reviewing Plaintiff's obesity.

In any event, there is insufficient evidence of record to establish that Plaintiff had any greater limitations that what were assigned by the ALJ in the RFC determination.  Stated differently, the Court finds substantial evidence supports the ALJ's determination of the Plaintiff's RFC because the ALJ relied on objective medical evidence in the record to make that determination.  (*See* Tr. at 16).  For instance, the ALJ cited evidence that Plaintiff's ambulation difficulties did not rise to the level of a Listing because she did not require an assistive device to ambulate and because there was no evidence of reduced leg strength.  (Tr. at 16).  The ALJ also noted that Plaintiff reportedly felt much better and her examination improved after her ankle surgery.  (*See* Tr. at 16 (citing Tr. at 446)).  In addition, the ALJ noted that, when Plaintiff was able to walk, she had more independence with her daily activities.  (Tr. at 16 (citing Tr. at 563)).  Moreover, as discussed in Part II.B., *infra*, the ALJ properly evaluated Plaintiff's complaints of pain and found her statements not to be entirely credible.  Thus, Plaintiff's statements do not establish greater limitations.  Taking all of this together, the Court finds that the ALJ's RFC determination is supported by substantial evidence and that the ALJ did not err in considering Plaintiff's obesity when determining Plaintiff's RFC.  Thus, the ALJ's decision is affirmed on this issue.

### B.      Plaintiff's Credibility

Plaintiff's next contention is that the ALJ erred in assessing her credibility.  (Doc. 15 at 12).  Plaintiff argues that the ALJ's assessment "is unsupported by substantial evidence because the ALJ misconstrued the evidence of record and did not articulate legally sufficient rationale for discrediting Plaintiff."  (*Id.*).

Defendant disagrees, arguing that substantial evidence supports the ALJ's findings. (Doc. 16 at 9). Defendant argues that the ALJ adequately explained why he found Plaintiff's statements not to be entirely credible. (*Id.* at 12-13).

As an initial matter, Plaintiff argues that the ALJ violated SSR 16-3p. (Doc. 15 at 2). The Court notes that the ALJ's decision, (Tr. at 9-27), was rendered on February 26, 2015 before SSR 16-3p was issued. *See* SSR 16-3p, 2016 WL 1119029 (effective date modified to March 28, 2016, 2016 WL 1237954).[5] The Appeals Council's denial, (Tr. at 1-6), however, was issued on May 5, 2016, after SSR 16-3p became effective on March 28, 2016.

The applicability of the SSR 16-3p could be impactful in some situations because SSR 16-3p deals with an ALJ's credibility determination of a claimant. *See* SSR 16-3p, 2016 WL 1119029, at *10. Specifically, SSR 16-3p supersedes SSR 96-7p and eliminates the use of the term "credibility" from the ALJ's analysis, and instead clarifies that "subjective symptom evaluation" is not an examination of an individual's character or truthfulness in the manner typically used during an adversarial court litigation. 2016 WL 1119029, at *10.

At this point, there is some question as to whether SSR 16-3p should apply retroactively. *See Wood v. Berryhill*, No. 4:15-CV-1248-LSC, 2017 WL 1196951, at *8 (N.D. Ala. Mar. 31, 2017). The Eleventh Circuit has not determined, in a published opinion, whether SSR 16-3p should apply retroactively. *See Green v. Soc. Sec. Admin., Comm'r*, No. 16-16272, 2017 WL 3187048, at *4 (11th Cir. July 27, 2017) (declining to apply SSR 16-3p retroactively).

---

[5] "Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration." *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990)). While Social Security Rulings are not binding on the Court, *id.*, they are nevertheless afforded "great respect and deference, if the underlying statute is unclear and the legislative history offers no guidance." *Id.* (citing *B. ex rel. B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. 1981)).

Nonetheless, the Supreme Court has previously stated that "[r]etroactivity is not favored in the law," and administrative rules will not be construed to have retroactive effect unless Congress expressly empowers the agency to promulgate retroactive rules and the language of the rule explicitly requires retroactive application. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). Thus, based on the language from *Bowen* and without any specific retroactive language in SSR 16-3p, the Court is not convinced that SSR 16-3p applies retroactively. *See id.*

Notwithstanding the issue of whether SSR 16-3p should apply retroactively, the outcome in this case would be the same. Specifically, while SSR 16-3p eliminates the term "credibility" from the analysis and replaces it with "subjective symptom evaluation," SSR 16-3p does not alter what the ALJ must consider in evaluating a claimant's symptoms. *See id.*; *see also Wood*, 2017 WL 1196951, at *8. In this instance, Plaintiff does not argue that the new language from SSR 16-3p is dispositive. Instead, Plaintiff argues that the ALJ misapplied the criteria for evaluating Plaintiff's subjective symptoms. As such, the Court finds that the retroactivity of SSR 16-3p is immaterial to the present case.

Turning to the ALJ's credibility determination, the Court notes that to establish disability based on testimony of pain and other symptoms, a plaintiff must satisfy two prongs of the following three-part test: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.3d 1221, 1223 (11th Cir. 1991)). After an ALJ has considered a plaintiff's complaints of pain, the ALJ may reject them, and that determination will be reviewed to determine if it is based on substantial evidence. *Moreno v. Astrue*, 366 F. App'x 23, 28 (11th Cir. 2010) (citing *Marbury v.*

*Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)).  If an ALJ discredits the subjective testimony of a

plaintiff, then he must "articulate explicit and adequate reasons for doing so.  Failure to articulate

the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony

be accepted as true." *Wilson*, 284 F.3d at 1225 (internal citations omitted).  Nevertheless, the

Eleventh Circuit has stated that "[t]he question is not . . . whether [the] ALJ could have

reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to

discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

> The factors an ALJ considers in evaluating a plaintiff's subjective symptoms include:
>
> 1.  The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7.  Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3; *see also* SSR 16-3p, 2016 WL 1119029, at *7 (factors

nearly identical to SSR 96-7p); *Moreno*, 366 F. App'x at 28 (citing 20 C.F.R. § 404.1529(c)(3)).

"A clearly articulated credibility finding with substantial supporting evidence in the record will

not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562.

In looking at Plaintiff's credibility, the ALJ gave three reasons for finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. at 18). Specifically, the ALJ noted that (1) there was evidence of non-compliance with treatment; (2) some of Plaintiff's assertions were not supported by the evidence of record; and (3) Plaintiff tended to minimize her participation in daily activities. (Tr. at 18). The ALJ specifically noted that "[n]o single factor mentioned is conclusive on the issue to be determined, but when viewed in combination, and in conjunction with the medical history and examination findings, they suggest that the claimant is not as limited as is alleged." (Tr. at 19).

Here, the Court finds that the ALJ articulated explicit and adequate reasons for discrediting Plaintiff's subjective testimony and those reasons are supported by substantial evidence of record. *See Wilson*, 284 F.3d at 1225.

Specifically, the first reason given by the ALJ was "some evidence of non-compliance with treatment" by Plaintiff. (Tr. at 18). On this point, Plaintiff argues that the ALJ's finding is not consistent with the regulations and that the ALJ failed to develop the record because he failed to make a valid determination of noncompliance. (Doc. 15 at 11).[6] Defendant disagrees, arguing that the ALJ is only required to explore reasons for noncompliance if the ALJ relies on noncompliance "primarily if not exclusively" for the denial of disability benefits. (Doc. 16 at 14 (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003)).

On this point, the Court agrees with Defendant that the ALJ did not fail to develop the record. In *Ellison v. Barnhart*, the Eleventh Circuit indicated that an ALJ does not err by failing to explore the reasons for noncompliance if the ALJ's finding that the claimant "was not disabled

---

[6] Plaintiff asserted this argument in the same section as her obesity arguments. (*See* Doc. 15 at 11). Nonetheless, because Plaintiff's compliance with her medication is discussed in the ALJ's credibility determination of Plaintiff, the Court addresses it here.

was not significantly based on a finding of noncompliance." *Id.* Here, the ALJ cited multiple reasons, none of which were conclusive, but when viewed together with the medical history and examination findings suggested Plaintiff is not as limited as is alleged. (*See* Tr. at 18-19). As a result, the Court finds that the ALJ did not err by citing noncompliance as a reason.

Moreover, upon review of the file, Plaintiff, in fact, appears to have been noncompliant with her treatment. For instance, as noted by the ALJ, Plaintiff was not compliant with her blood pressure medications. (Tr. at 18 (citing Tr. at 396)). Similarly, while Plaintiff was advised to lose weight and maintain a diet, there was only some evidence she attempted to follow through. (Tr. at 18 (citing Tr. at 400, 563)). Moreover, the ALJ noted that when Plaintiff did lose some weight, her mobility improved. (Tr. at 18 (citing Tr. at 563)). Further, while Plaintiff claimed she quit smoking years ago, the ALJ noted record evidence where Plaintiff received smoking cessation counseling. (Tr. at 18 (citing Tr. at 40, 400)). These reasons for discounting Plaintiff's credibility were not rebutted by Plaintiff. (*See* Doc. 15 at 10-15). Thus, the ALJ's finding that Plaintiff had some evidence of non-compliance with treatment is supported by substantial evidence of record.

The second reason given by the ALJ for discounting Plaintiff's testimony is that Plaintiff's "assertions" were not supported by the record. (Tr. at 18). The ALJ's citations to the record provide substantial evidence in support of this finding. For instance, the ALJ noted that, although Plaintiff stated that she needed to elevate her legs due to swelling, there was apparently no mention of this need in the medical record, and there was nothing to suggest that she could not elevate her legs outside of work hours. (Tr. 18 (citing Tr. at 46)). Similarly, while Plaintiff complained of carpal tunnel syndrome and testified that she has trouble opening jars and buttoning, the ALJ found that her carpal tunnel syndrome did not appear to have caused any

severe limitations, specifically noting that Plaintiff's neurological exams were normal. (Tr. at 18 (citing *e.g.*, Tr. at 518)). Moreover, the ALJ noted that, while Plaintiff was referred to a specialist, she apparently never followed through with the appointment. (Tr. at 18 (citing Tr. at 512)). In sum, the Court finds that this reason given by the ALJ for discounting Plaintiff's credibility – *i.e.*, Plaintiff's "assertions" not being supported by the record – is supported by substantial evidence of record.

The final reason given by the ALJ for discrediting Plaintiff was that Plaintiff tended to minimize her participation in daily activities. (Tr. at 18). The ALJ found that, while Plaintiff alleged severe limitations in her daily activities, the medical records showed improvement when she was consistent with her treatment and compliant with recommendations for diet and exercise. (Tr. at 18-19 (citing Tr. at 416, 446, 539, 563)). Additionally, the ALJ found that, while Plaintiff alleged she was in constant pain, "there is nothing in the medical records to suggest that she is at that level of severity." (Tr. at 19). Further, the ALJ noted Plaintiff had physical therapy for her symptoms and that her overall treatment has been conservative in nature. (Tr. at 19).

Plaintiff takes issue with the ALJ's decision on these points. (*See* Doc. 15 at 13). Specifically, Plaintiff argues that her testimony and the record evidence demonstrates that she is severely limited by chronic pain. (*Id.*). Plaintiff contends that her severe limitations are corroborated by her statements to treating physicians. (*Id.*). Moreover, Plaintiff notes her weight is in the range of extreme obesity which exacerbates her multiple impairments of weight-bearing joints. (*See id.*). Plaintiff also notes that she reported needing assistance from family members for daily activities. (*Id.*). Plaintiff further notes that she had multiple surgeries and extensive physical therapy of her weight-bearing joints. (*Id.*). Moreover, Plaintiff contends that her

imaging studies show that, despite surgery, she has advanced arthritis in her knee in addition to abnormalities and swelling.  (*Id*. at 14).

Plaintiff argues that, despite the evidence of record, the ALJ improperly discredited her pain symptoms, stating "there is nothing to suggest that she could not be more active around the home."  (*Id.*).  Plaintiff argues that the ALJ did not cite to any "activities that Plaintiff performed that were inconsistent with her allegations of disability."  (*Id.*).  Plaintiff argues that the ALJ "discredited Plaintiff because she was unable to impossibly prove a negative:  that she was unable to perform more household activities."  (*Id.*).  Additionally, Plaintiff argues that the ALJ erroneously concluded that Plaintiff's medication helped to alleviate her symptoms.  (*Id.*).  Plaintiff asserts that, to the contrary, she consistently reported severe pain that interfered with her mobility, despite aggressive pain management with opiate medications.  (*Id*. at 15).  Thus, Plaintiff argues that the ALJ's credibility decision cannot reasonably be upheld.  (*Id*.).

Here, the Court finds that the ALJ did not adequately support this reason with citations to the record.  For instance, the ALJ did not provide a citation to the record in the credibility section regarding his finding that "there is nothing in the medical records to suggest that she is at that level of severity" regarding her allegedly disabling pain.  (*See* Tr. at 19).  Moreover, Plaintiff's noncompliance with the recommendations for diet and exercise do not necessarily show that Plaintiff can perform any specific activities of daily living.  (*See id.*).  Further, as noted by Plaintiff, the ALJ did not cite any specific activities that Plaintiff could perform that were inconsistent with her allegations of disability.  (*See* Tr. at 18-19).

Nevertheless, when reviewing a credibility determination, the Eleventh Circuit has stated that "[t]he question is not . . . whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it."  *Werner*, 421 F. App'x at 939.

Here, the ALJ provided two adequate reasons for discrediting Plaintiff's statements supported by substantial evidence of record. (*See* Tr. at 18-19). Because the ALJ articulated specific reasons, supported by the record, for finding that Plaintiff was not entirely credible, the Court cannot find that the ALJ was clearly wrong to discredit Plaintiff's testimony. *See Wilson*, 284 F.3d at 1225. Accordingly, the ALJ's credibility determination is affirmed. *See id.*

## C.    Plaintiff's Peripheral Neuropathy/Carpal Tunnel Syndrome

Plaintiff's final contention is that the ALJ's RFC assessment is not supported by substantial evidence because it does not account for her carpal tunnel syndrome in violation of 20 C.F.R. §§ 404.1545(b), 416.945(b)." (Doc. 15 at 15). Plaintiff argues that the ALJ "failed to consider, or even mention, Plaintiff's carpal tunnel syndrome in upper extremities." (*Id.* at 16). Moreover, Plaintiff argues that the ALJ improperly failed to assess any limitations in handling or fingering in her RFC. (*Id.*). Thus, Plaintiff argues that the ALJ failed to consider "the impact of this impairment in assessing the RFC or Plaintiff's credibility." (*Id.*).

Defendant disagrees, arguing that substantial evidence supports the ALJ's decision. (Doc. 16 at 9). Defendant contends that, contrary to Plaintiff's assertions, the ALJ considered Plaintiff's allegation of carpal tunnel syndrome and reasonably found that Plaintiff did not have any limitations related to it. (*Id.* (citing Tr. at 18)). For instance, Defendant notes that "[t]he ALJ acknowledged that Plaintiff was diagnosed with [carpal tunnel syndrome] in 2014, but found it had not caused any severe limitations." (*Id.* (citing Tr. at 18, 508)). Defendant contends that, although Plaintiff alleges difficulty opening jars and buttoning, the ALJ noted Plaintiff's neurologic examinations were normal. (*Id.* (citing Tr. at 18, 48-49, 510-13, 518)). Further, Defendant points out that, while Plaintiff was referred to a specialist for an evaluation, "the ALJ noted there was no evidence she followed through with that referral. (*Id.* (citing Tr. at 18, 512)).

Thus, Defendant argues that "there is no merit to Plaintiff's argument that the ALJ did not properly consider her [carpal tunnel syndrome] in evaluating her RFC" and "Plaintiff failed to prove she was more limited than that found by the ALJ." (*Id.*).

The Court agrees with Defendant and finds that the ALJ did not err on this issue. Specifically, the Court notes that "the mere existence of [an] impairment[] does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard." *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)). Here, contrary to Plaintiff's assertions, the ALJ expressly evaluated Plaintiff's carpal tunnel syndrome in assessing her RFC. (*See* Tr. at 18). In fact, the ALJ noted that Plaintiff complained of carpal tunnel syndrome and that she testified that she has trouble opening jars and buttoning. (Tr. at 18). Nonetheless, the ALJ also noted that Plaintiff's neurological exams were normal. (Tr. at 18 (citing *e.g.*, Tr. at 518)). Moreover, the ALJ noted that, while Plaintiff was referred to a specialist, she apparently never followed through with the appointment. (Tr. at 18 (citing Tr. at 512)). Taken together, this evidence provides substantial evidence in support of the ALJ's decision not to assign any specific limitations related to carpal tunnel syndrome. Accordingly, the Court affirms as to this issue.

### III.     Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence and decided upon proper legal standards.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on September 26, 2017.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties